Good morning, Your Honors. Alan Engle for Plaintiff Amanda Lewis. Now, as is clear from the briefing, there's two issues in this case. A grant of a motion of summary judgment on the work-for-hire issue and a finding of preemption of California Civil Code Section 3344 concerning rights of publicity on a 12b6 motion to dismiss without argument. The scope of the employment copyright issue I think is pretty clear-cut from the briefing. It's essentially a contested facts issue, and we feel that the facts are strongly in our favor. To the extent that there was not only a disputed question of material fact, but that the material facts are clearly in plaintiff's favor, that this work was not done within the scope of her employment, and there was nothing else like assigned writing or any kind of contract sufficient to transfer copyright to Blizzard. So I'd be happy to entertain questions on that. I have a feeling, you know, as we argue in our briefs, that perhaps the district court was operating under just a misapprehension as to what was involved with Ms. Lewis's duties, which can happen. I mean, this is dealing with pretty new technology, a novel system. As far as I know, if Activision Blizzard wasn't the first to implement this kind of in-game, immediate online customer support, they were certainly one of the first. You know, and the fact that all the participants and players of this game paid $15 or more a month to participate was certainly more than adequate to fund that kind of instantaneous support. Counsel, I wanted to ask you just as a preliminary question. You have your federal claim and you have your state claim. Yes. As to your state claim, it was alleged in the initial complaint that the initial complaint was, if I remember correctly, dismissed without prejudice, correct? And then you filed a First Amendment complaint, and you didn't allege the state law claim. Yes. Am I right? Okay. There is a Ninth Circuit case, Chubb Custom Insurance Company, that says under these circumstances the plaintiff has waived her state law claims because it was an initial complaint that was dismissed without prejudice and not realleged. Your opponent, in a footnote, it's page 46 of the red brief, note 13, makes this argument. Now, it's not the most development argument, but they do make it, and yet you did not respond to it in the reply brief. So I wanted to give you an opportunity now. Why isn't the state law claim just waived? Sure, Your Honor. I guess there's a bit of a spectrum between permitting amendment or dismissing without prejudice and dismissing with prejudice. I'm going to use the order of the district court's ruling on this particular issue and the allowance of amendment on page 9 of the order, which is ‑‑ I don't have an immediate cite to the excerpts of record. I think I do. I think it's excerpts of page 45. Go ahead. Okay. This is order on motion to dismiss second and third claims for relief. And the middle paragraph on page 9 states, as currently pled Lewis's claim for commercial misuse of voice and quantum merit are based wholly on Blizzard's use of the voice recordings and are therefore dismissed as preempted by federal copyright law. And then importantly, because amendment does not appear to be futile, Lewis is granted leave to amend her state law claim only to the extent that she can allege, subject to Rule 11, commercial misuse of her, quote, name, voice, signature, photograph, or likeness that is not fixed in a recording. Okay. That's a lot of conditions. Well, it's always subject to Rule 11, I would hope. I mean, that doesn't even need to be in there. So that's not a condition. Okay. But the consequent or second half of the conjunction or states, commercial misuse of her name, voice, signature, photograph, or likeness that is not fixed in a recording. Okay. The district court got the law wrong here and then asked for an amendment. Well, under the district court's understanding of the law, amendment would be futile. Okay. And, you know, we would have loved to have replayed that claim, but if the district court is correct on the law, we could not have replayed that claim consistent with Rule 11. And therefore, we had to accede. You know, this was in substance a dismissal with prejudice on this point, subject to the manner in which the district court interpreted the law. So I understand your argument. I'm a little puzzled as to why. I think this is the first time we've ever heard it. Why are we hearing about this now and not either before the district court or in the reply brief? Well, one, because it was ‑‑ I think it was raised in a footnote in their reply. Yes. So I guess we could have filed a surreply to address that. No. It was in the answer. Oh, yes. It was a footnote in the answer. I'm sorry. Yes. You know, ideally, we should have addressed it. I was just trying to understand if I had missed something. No. You know, the thinking when we went back to amend was just that the district court did not actually give us leeway to state the claim that we thought was a legally cognizable claim. Your state law claim, your client's state law claim, wasn't of the kind that the district court permitted you to ‑‑ gave you leave to amend. It was of the kind that was, in your view, excluded with prejudice as being preempted by the Congress. Yes. That's how ‑‑ I mean, she said ‑‑ she says, the district court judge said, to the extent that because amendment does not appear to be futile, you may amend subject to these conditions, and this is my understanding, you know, based on this reading of the law, we did not feel that that gave us any leeway to amend. So I would call it an effective dismissal with prejudice, although it doesn't ‑‑ it says it's without prejudice. And actually, just to continue to address that second claim, because there's at least an interesting interrelation with the first claim, we're willing to concede, and we do concede in the brief, that if our ‑‑ to the extent plaintiff's musical composition in particular is copyrightable, then the voice misappropriation claim fails and is preempted by the copyright statutes. However, that claim is an alternative claim in the complaint because, well, actually they didn't file an answer until after they had filed their 12B6, but they allege in the answer and ‑‑ and assert in various ways that plaintiff's contribution is de minimis and not ‑‑ not extensive enough to be protected under copyright law. If that's the case, then plaintiff cannot have a copyright in the subject matter of the dispute, but yet they're still using her voice, and that, you know, puts us at a dilemma. But we would assert that, you know, and ‑‑ and we think the statute makes clear that to the extent that what is being appropriated by defendants is not covered by copyright law, it is very much protected by state law. And actually, you know, I was thinking of ‑‑ of, you know, and there's a case like laws and other things that deal with previously copyrighted songs that are later used, and there would be a conflict between the ‑‑ the state law rights of publicity and copyright, and I think the courts have tried diligently to avoid that situation when there is a conflict, and when it looks like there's going to be a potential conflict, they say, well, hold on, state law preempted, have a nice day. In this case, again, if there is a clear determination, as there has to be somewhere along the line, that plaintiff's contribution is not covered, not within the scope of copyright, then it will be covered by state law claims. And I think a good hypothetical that would kind of clarify this is take, for example, the statement, that's all, folks, by Porky Pig. Okay? You can't have a copyright in slogans, catchphrases, that sort of thing. Now, say the person who spoke those words or Yabba‑Dabba‑Doo by Fred Flintstone didn't have a copyright, they had a license to the studios that did the film strips, and then, say, 50 years later, someone creates a song which liberally samples that, you know, somewhere between 10 and 30 times to serve as the backbone in a song. Well, under defendants' understanding of the and are fixed in a tangible medium of expression and would otherwise, other than the fact that they're de minimis and are not covered by copyright law, would nonetheless fall outside the scope of California's right of publicity statutes. I don't, you know, given the phrasing of the preemption clause in the copyright statute, given Ninth Circuit cases finding California law right of publicity statute applicable in various circumstances, given California's interest in having a right of publicity statute, in particular to deal with these situations that are not covered by copyright law, you know, we think that the correct interpretation, as would be the case here, is that, you know, the use of a party of this recorded material containing the vocal expressions of the plaintiff would not be preempted. So I want to make sure I understand the argument you're making. So the argument you're making is that the recording that she made is not copyrightable? No. This is an argument in the alternative. Okay. So I just want to lay it out to you. The first argument. Okay. So the first argument is it is copyrightable, but it's hers. Yes. And then the State law claim is preempted. Yes. It was not, you know, there's no writing. It's not work-for-hire. Therefore, copyright vests in her upon creation. Okay. End of argument. Or it is not copyrightable. Because it's de minimis. And then you have your State law claim.  Okay. Thank you. I'd like to reserve the balance of my time for rebuttal. Okay. Good morning, Your Honors. May it please the Court. I'm Mark Mayer, counsel for the defendants in this case, Blizzard Entertainment and Activision Blizzard. Your Honor, the core issue in this case we believe to be the work-for-hire issue. Our view is that this case presents the classic paradigmatic example of a work-for-hire. What we're dealing with here is we're dealing with a few minutes of voiceover recording, a contribution that was made by the plaintiff while she was a full-time employee of our client, of Blizzard, doing work that was contemplated under her employee handbook and her job description, doing work that was related to, directly related to, and at a minimum incidental to her broader responsibilities to Blizzard and to the World of Warcraft team, doing a task that was invented by Blizzard, not a task that was self-motivated or self-directed, doing work at Blizzard's direction, under Blizzard's control, at the Blizzard recording studio, using the Blizzard recording equipment, which was set up and maintained and determined by a Blizzard employee. This is during business hours while she was on the clock. She was being paid her regular salary and for the very purpose of making a voice to be used in the game. There was really no other purpose for this project. The facts here were undisputed. They're set forth in the briefs. And in terms of the work-for-hire analysis, we discuss in the briefs this is a three-factor test. Since she is an employee and there's no dispute that she's an employee, we then turn to the question of whether this was in the scope of her employment. To determine whether it's within the scope of her employment, courts then look to the restatement of agency and they apply this three-factor test. As we understand the plaintiff's position, two of those three factors are either conceded or all but conceded. There's no question, there's no dispute that all the work was done on company time, on the company's premises. And there's also no dispute that it was done for the purpose of benefiting Blizzard and certainly actuated with the intent of providing a service to her employer within the scope of her employment. As to the first factor, whether this was a work of the type she was employed to perform, we think the job description makes that clear. The job description specifically provides that among the tasks she has been employed to perform is assisting with the creation of content during the ever-ongoing development of the World of Warcraft game. That is precise. Because this isn't the kind of thing she was doing on any kind of regular basis. This appears to be a one-off. And that may be true that this was not something she was doing on a regular basis. Somebody put out a call for people that wanted to have their voices recorded to see that they might get used at some other time. It's not like all the people that got that email are in the customary, their jobs usually entail making those kind of recordings. Yeah. Now, I would note, Your Honor, that the call for voiceover work was given only to the game masters. This was an opportunity that was offered solely to the game masters. It was accepted by 123 game masters. Now, the test necessarily is broader than what an employee's day-to-day tasks are. And it necessarily has to be broader because from time to time, employees may be asked to work on something that may be a little bit of a departure, something different from the day-to-day. And when that happens, what we look at is, well, what's the relationship between the work that's being done, the particular task, and the employee's other tasks that they're doing? What does the job description say? Was this incidental to the employment? Is this something we might expect an employee to do in the course of their employment? Well, the employees weren't instructed to do it. They were really asked to volunteer. And that's true as well. And, again, that is not determinative of whether it's a work of the type they were employed to perform. They weren't required to do this task. It was offered to game masters because of game masters' particular expertise and knowledge and involvement in the game, interacting with the game, knowing all of the ins and outs of the game. 123 offered their services to do this work. Ms. Lewis was selected to do it. The fact that she wasn't- And out of 23, out of how many? I don't know the answer. I would imagine- Just out of curiosity. I mean, I can imagine somebody would want to do it. My son plays the game. I suspect if he had a chance to contribute something, he'd jump at it. And, in fact, the testimony of Ms. Lewis is that when she took the job, she had heard that other people were given these kinds of opportunities. It was something she hoped to do. She is a fan of the game, as are many of the people that work at Blizzard. She welcomed the opportunity to do this kind of work. She hoped that she might be able to do this work. And she went in with the expectation that these sorts of opportunities might come up while she was there. She was a custodian. Let's say she worked in the IT department maintaining the servers. Would your argument be different? Not necessarily. And I think it depends upon what the nature of that employment is. If we're talking about someone who's employed in a completely unrelated field, they do something completely different, it's not in their job description, it's not related in any manner to their other work, then that might be a different conversation. Here, we're not even close to that situation. We have a woman whose job is to work on the game, to work in the game, to be present sometimes as a character in the game, to interact with content in the game. And her job description explicitly provides that among the tasks she might have to do while she's working on World of Warcraft may be that she needs to assist with content. She may be assigned to a different team. She may be offered the opportunity to volunteer to help out with other projects. But this is specifically contemplated as within this job. And I'd like to now just speak briefly to the preemption issues, because I think that the State law claims and the preemption issues are extremely straightforward and were guided by this Court's decision in the laws case. Preemption is a two-part test under Section 301 of the Copyright Act. The first question is, are we dealing with content or material that is within the subject matter of copyright? And then second, does the claim seek to vindicate rights that are equivalent to rights under copyright? Laws and the other cases we cite, the Jules Jordan case, the Butler case, make very clear that when the claim involves a sound recording or the use of a voice as embodied and encompassed within a sound recording, those are claims that are preempted. Those are copyright claims. They fall within the subject matter of copyright, in this case a sound recording, or the vocal performance as fixed in the sound recording. And they seek to vindicate rights that are equivalent. Her claims in this case are very simple. Blizzard took the sound recording, which contained my voice, and they put it in the game and they synchronized it into the baby murloc creature and character. That is exactly the situation in laws. That's exactly what is contemplated by the kind of claim that would be preempted by the Copyright Act. Now, the plaintiff makes the point that, well, this was sort of an alternative claim because the defendants have argued either that the noises are not copyrightable or that there's no musical composition or that they're de minimis. That is not relevant to the preemption analysis. The preemption analysis is concerned with whether or not the work is within the subject matter of copyright. A sound recording is within the subject matter of copyright. Now, whether or not that recording is copyrightable, whether it possesses sufficient originality to become copyrightable and protectable, doesn't take it outside the subject matter of copyright. That's made clear. We discuss this at pages 53 through 55 of our brief. It's also discussed, I think, most notably in the Motorola case. That was a case which involved, the basketball NBA case, involved transmission of sports scores. The issue was, well, the facts and the scores are not copyrightable. Can there still be preemption? And the point that the Court makes is whether or not the content is copyrightable or protectable, it still falls within the subject matter of copyright. And in this case, the subject matter of copyright is the vocal performance as embodied in those sound recordings. And it was the sound recordings that were used. This was not a sound-alike case. This is not equivalent to the Bette Midler case or the Tom Waits case. This is the only use of her voice was as embodied in that recording. If there are any questions, Your Honor. Thank you. Thank you, Your Honor. Rebuttal. To start backwards, you know, the Motorola NBA case is a Second Circuit case. We didn't work that hard to distinguish it because it's not this Court. With regard to the preemption issue, again, this was dismissed on a motion to dismiss, and there seemed to be a lot of room for debate about this. There are, we will concede, some quotes that one can pull out from cases like Laws that appear to go against us. Preemption is customarily a legal issue, isn't it? Yes. So a motion to dismiss doesn't seem that surprising. Most issues are a mixed question of fact, we would argue, and all issues are contextual. And I think what happens in this case is defendants repeatedly try to strip away context, and therefore one loses the train in what the purpose of the law is and what the meaning of the law is. Defendant just argued that this material, with respect to the work for hire, appeared in an employee handbook and a, quote, job description. It actually appeared in a training manual, and there were numerous contradictory paragraphs, some much more specific, that go against the general use of the word content, including one saying, quote, essentially your job is as a customer service representative, and five other things, and that's the facts of the case. And again, this was given on summary judgment where there was very little factual development and testimony. And this can happen. I've seen this happen in cases where kind of individual documents are globbed onto, and the context, the broader context gets ignored. And we think in this case, look at her job. You were right to raise the example of other parties working in the company. I mean, essentially what they were doing is trying to save a buck by saying, hey, what's our biggest employment category? Oh, we've got these GMs that, you know, return people's missing swords and armor. Let me ask you this. They sent out a blast to all employees to design a new logo, and they like the work of Ms. Lewis, and so they say, look, we'll adjust your schedule so you work on this. That will count as work done. And here's the pencils, the paper, the room to work on it. And she comes up with a logo they use. Isn't that work for hire? Not at all if she's paid her normal wage. That's outside of the scope of her job duties, and any general counsel in a $10 billion entertainment company has got to put a piece of paper before her and say, sign away this assignment to anything. But hasn't that become her job duties if she's agreed to do it? No. I mean, that would render, you know, any case where this takes place as a tautology. You know, if she received new training and there was maybe a jump in wage and all things like this, another thing to correct from what defendants noticed, she did do this work on her own time. Do you have any authority that says that she would have the copyright interest and it wasn't work for hire? There's a case that is cited by defendants. I believe it's a Southern District of Florida case where they actually did find the work was work for hire in terms of creating cooking manuals for pasta, which was not what the guy was originally hired to do. But the district court made specific findings that the individual's job changed and there was a material shift in what he was employed to do over the course of his performance, and therefore it became work for hire in the context of his new job. Well, what about applying that here? There were no ancillary changes in her employment related to this new task. You worked on it at their schedule. They were paying her, correct? They were paying her her wage, her normal wage. They had to jump through some hoops to get that. It would have been wage theft if they didn't do that. She created the voice at home. And, yes, she had to work on it at their schedule because they were doing the recording and she can't just appear at some time that doesn't work for them or they can't record it. It's not just the voice. It's the recording that's copyrightable. Yes. We consider the recording much less significant than the composition of the song and her use of the voice that she created. Thank you very much. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted. That concludes our calendar for today. We're adjourned.
judges: Clifton, Owens, Moskowitz